RANSOM, GILBERTSON, MARTIN &
RATLIFF, LLP
Jeffrey S. Ratliff
5441 S. Macadam Avenue, Suite 301
Portland, OR 97239
T: 503-226-3664

*Liaison Counsel for Plaintiff*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| LLOYD STEINBERG, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCHMITT INDUSTRIES, INC., MICHAEL R. ZAPATA, PHILIP BOSCO, and JAMIE SCHMIDT,<br><br>Defendants. | **Case No: 3:22-cv-1533**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lloyd Steinberg ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Schmitt Industries, Inc. ("Schmitt Industries" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that

1

substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Schmitt Industries securities between September 1, 2020 and September 20, 2022, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Schmitt Industries securities during the Class Period and was economically damaged thereby.

7.      Defendant Schmitt Industries purports to design, manufacture and sell high precision test and measurement products, solutions, and services through its Acuity® and Xact® product lines. Acuity provides laser and white light sensor distance measurement and dimensional sizing products, and their Xact line provides ultrasonic-based remote tank monitoring products and related monitoring revenues for markets in the Internet of Things environment. The Company also owns and operates Ample Hills Creamery, an ice cream manufacturer and retailer based in Brooklyn, New York.

8.      Defendant Schmitt Industries is incorporated in Oregon and its head office is located at 2765 N.W. Nicolai Street, Portland, Oregon 97210. Schmitt Industries securities trade on NASDAQ under the ticker symbol "SMIT."

9.      Defendant Michael R. Zapata ("Zapata") has served as the Company's Chief Executive Officer ("CEO"), President, and Executive Chairman since July 2019.

10.     Defendant Philip Bosco ("Bosco") has served as the Company's Chief Financial Officer and Treasurer since December 2020.

11.     Defendant Jamie Schmidt ("Schmidt") served as the Company's Chief Financial Officer from January 2020 through December 2020.

12.     Defendants Zapata, Bosco, and Schmidt are collectively referred to herein as the "Individual Defendants."

13.     Each of the Individual Defendants:

3

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

14.     Schmitt Industries is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Schmitt Industries under *respondeat superior* and agency principles.

4

16.     Defendant Schmitt Industries and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading
### Statements Issued During the Class Period

17.     On August 31, 2020, after market hours, Schmitt Industries filed with the SEC its 2020 Annual report on Form 10-K for the year ended May 31, 2020 (the "2020 Annual Report").[1] Attached to the 2020 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Zapata and Schmidt attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18.     The 2020 Annual Report downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part, regarding its internal controls and its remediation efforts and timeline:

*Management's Remediation Initiatives*

Management has developed a remediation plan in response to the material weakness identified, which includes:
•     revising the design of existing controls, and designing and implementing additional key controls related to identifying and accounting for both routine and nonroutine transactions, which include protocols for engaging third-party accounting experts, where necessary;
•     establishing protocols to ensure key controls operate on a timely basis to prevent and detect misstatement;
•     providing additional GAAP technical accounting and internal control

---

[1] The September 28, 2020 amendment to the 2020 Annual Report filed with the SEC on Form 10-K/A did not include financial statements or statements related to the Company's internal controls.

related training to both accounting and non-accounting departments.

*We anticipate that these plans will be fully implemented and tested during 2021*
*such that our internal control deficiency will be remediated in that timeframe.*

(Emphasis added.)

19.     On August 31, 2021, after market hours, Schmitt Industries filed with the SEC its 2021 Annual report on Form 10-K for the year ended May 31, 2021 (the "2021 Annual Report").[2] Attached to the 2021 Annual Report were certifications pursuant to SOX signed by Defendants Zapata and Bosco attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20.     The 2021 Annual Report provided the following, in pertinent part, regarding the Company's financials:

---

[2] The September 28, 2021 amendment to the 2021 Annual Report filed with the SEC on Form 10-K/A did not include financial statements or statements related to the Company's internal controls.

| | Fiscal Year Ended May 31, | |
|---|---|---|
| | 2021 | 2020 |
| Net sales | $ 7,864,350 | $ 4,189,924 |
| Cost of revenue | 4,593,588 | 2,239,376 |
| Gross profit | 3,270,762 | 1,950,548 |
| Operating expenses: | | |
| General, administrative and sales | 12,045,174 | 4,061,621 |
| Impairment of intangible assets | 903,422 | — |
| Transaction costs | 125,167 | — |
| Research and development | 83,130 | 68,849 |
| Total operating expenses | 13,156,893 | 4,130,470 |
| Operating loss | (9,886,131) | (2,179,922) |
| Bargain purchase gain | 1,138,808 | — |
| Interest expense | (19,038) | — |
| Other income, net | 273,023 | 322,980 |
| Loss before income taxes | (8,493,338) | (1,856,942) |
| Income tax benefit from continuing operations | (403,666) | (14,638) |
| Net loss from continuing operations | (8,089,672) | (1,842,304) |
| Income from discontinued operations, including gain on sale, net of tax | — | 5,722,879 |
| Net (loss) income | $ (8,089,672) | $ 3,880,575 |
| | | |
| Net loss per common share from continuing operations: | | |
| Basic | $ (2.15) | $ (0.47) |
| Weighted-average number of common shares, basic | 3,765,783 | 3,939,833 |
| Diluted | $ (2.15) | $ (0.47) |
| Weighted-average number of common shares, diluted | 3,765,783 | 3,939,833 |
| | | |
| Net income per common share from discontinued operations: | | |
| Basic | $ — | 1.45 |
| Weighted-average number of common shares, basic | 3,765,783 | 3,939,833 |
| Diluted | $ — | $ 1.45 |
| Weighted-average number of common shares, diluted | 3,765,783 | 3,939,833 |
| | | |
| Net (loss) income per common share: | | |
| Basic | $ (2.15) | 0.98 |
| Weighted-average number of common shares, basic | 3,765,783 | 3,939,833 |
| Diluted | $ (2.15) | 0.98 |
| Weighted-average number of common shares, diluted | 3,765,783 | 3,939,833 |
| | | |
| Comprehensive (loss) income | | |
| Net (loss) income | $ (8,089,672) | $ 3,880,575 |
| Total comprehensive (loss) income | $ (8,089,672) | $ 3,880,575 |

21.   The 2021 Annual Report downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part, regarding its internal controls and its remediation efforts and timeline:

**Remediation of Material Weaknesses**

*Management has developed a remediation plan in response to the material weakness identified. Management intends to leverage additional accounting resources, both internal and external, to strengthen the financial close and reporting process so as to more effectively detect such misstatements in a more timely fashion. Additional accounting resources include the Company's announcement of the appointment of Philip Bosco as Chief Financial Officer*

7

on November 6, 2020, effective December 1, 2020. In addition, a consulting firm has been engaged to assist with the development and implementation of our internal controls remediation plan.

The remediation plan includes both management's assessment and recommendations from independent accounting advisors used in the review process. This remediation plan is intended to address the identified material weaknesses and enhance our overall control environment. ...

*Notwithstanding the identified material weaknesses, management believes that the Consolidated Financial Statements included in this Annal Report on Form 10-K present fairly, in all material respects, our financial position, results of operations, and cash flows as of and for the periods presented in accordance with U.S. GAAP.*

*Changes in Internal Control Over Financial Reporting*

In the current fiscal year ending May 31, 2021, the Company acquired the Ample Hills business. *As of May 31, 2021, management has expanded the head count in the accounting and finance department and is in the process of integrating this new business line into the Company's overall internal control environment. Further, management has performed a thorough review of processes and procedures to ensure appropriate segregation of duties are in place to improve the internal control environment. Management anticipates completing these integration efforts by the end of the fiscal year ending May 31, 2022.*

During Fiscal 2021, the Company identified an error in its recording of market-based stock compensation, and recorded an adjustment to the Consolidated Balance Sheet as of May 31, 2021, the Consolidated Statement of Operations and Comprehensive Income (Loss) and the Consolidated Statement of Changes in Stockholders Equity for the periods then ended.

Other than the above referenced matter, including those described in the Remediation of Material Weakness section above, there has been no change in the Company's internal control over financial reporting that occurred during the Company's fiscal year ended May 31, 2021 that has materially affected, or is reasonably likely to materially affect, such internal control over financial reporting.

(Emphasis added.)

22.    On October 20, 2021, Schmitt Industries filed with the SEC its quarterly report on Form 10-K for the period ended August 31, 2021 (the "1Q22 Report"). Attached to the 1Q22

Report were certifications pursuant to SOX signed by Defendants Zapata and Bosco attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23.     The 1Q22 Report provided the following, in pertinent part, regarding the Company's financials:

|  | Three Months Ended August 31, | |
|  | 2021 | 2020 |
|---|---|---|
| Net sales | $ 3,759,175 | $ 1,507,485 |
| Cost of revenue | 1,349,975 | 899,841 |
| Gross profit | 2,409,200 | 607,644 |
| Operating expenses | | |
| Selling, general and administrative | 4,130,686 | 2,086,716 |
| Transaction costs | — | 125,167 |
| Research and development | 9,265 | 17,453 |
| Total operating expenses | 4,139,951 | 2,229,336 |
| Operating loss | (1,730,751) | (1,621,692) |
| Bargain purchase gain | — | 1,271,615 |
| Forgiveness of Paycheck Protection Program loan | 588,534 | — |
| Interest expense | (11,276) | (2,511) |
| Other income, net | 112,029 | 98,580 |
| Loss before income taxes | (1,041,464) | (254,008) |
| Income tax provision (benefit) | 3,575 | (404,667) |
| Net (loss) income | $ (1,045,039) | $ 150,659 |
| | | |
| Net (loss) income per common share | | |
| Basic | $ (0.28) | $ 0.04 |
| Weighted-average number of common shares, basic | 3,780,439 | 3,763,752 |
| Diluted | $ (0.28) | $ 0.04 |
| Weighted-average number of common shares, diluted | 3,780,439 | 3,776,494 |

24.     The 1Q22 Report downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part, regarding its internal controls and its remediation efforts and timeline:

> *Notwithstanding the identified material weaknesses, management believes that the consolidated financial statements included in this Quarterly Report on Form 10-Q present fairly, in all material respects, our financial position, results of operations, and cash flows as of and for the periods presented in accordance with U.S. GAAP.*

...

**Changes in Internal Control Over Financial Reporting**

In the fiscal year ending May 31, 2021, the Company acquired the Ample Hills business. As of August 31, 2021, management has expanded the head count in the accounting and finance department and is in the process of integrating this new business line into the Company's overall internal control environment. *Further, management has performed a thorough review of processes and procedures to ensure appropriate segregation of duties are in place to improve the internal control environment. Management anticipates completing these integration efforts by the end of the fiscal year ending May 31, 2022.*

(Emphasis added.)

25.    On January 14, 2022, Schmitt Industries filed with the SEC its quarterly report on Form 10-K for the period ended November 30, 2021 (the "2Q22 Report"). Attached to the 2Q22 Report were certifications pursuant to SOX signed by Defendants Zapata and Bosco attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

26.    The 2Q22 Report provided the following, in pertinent part, regarding the Company's financials:

| | Three Months Ended November 30, | | Six Months Ended November 30, | |
| --- | --- | --- | --- | --- |
| | 2021 | 2020 | 2021 | 2020 |
| Net sales | $ 2,961,965 | $ 2,029,712 | $ 6,721,140 | $ 3,537,197 |
| Cost of revenue | 1,356,874 | 1,067,599 | 2,706,849 | 1,967,440 |
| Gross profit | 1,605,091 | 962,113 | 4,014,291 | 1,569,757 |
| Operating expenses | | | | |
| Selling, general and administrative | 4,161,890 | 3,091,516 | 8,292,576 | 5,178,232 |
| Transaction costs | — | — | — | 125,167 |
| Research and development | 5,580 | 17,877 | 14,845 | 35,330 |
| Total operating expenses | 4,167,470 | 3,109,393 | 8,307,421 | 5,338,729 |
| Operating loss | (2,562,379) | (2,147,280) | (4,293,130) | (3,768,972) |
| Bargain purchase gain | — | — | — | 1,189,512 |
| Adjustments to bargain purchase gain | — | (82,103) | — | — |
| Gain on sale of property and equipment | 4,598,095 | — | 4,598,095 | — |
| Forgiveness of PPP loan | — | — | 588,534 | — |
| Interest expense | (18,303) | (1,285) | (29,579) | (2,544) |
| Other income (expense), net | 173,274 | (134,164) | 285,303 | (36,836) |
| Income (loss) before income taxes | 2,190,687 | (2,364,832) | 1,149,223 | (2,618,840) |
| Income tax provision (benefit) | 2,775 | 1,637 | 6,350 | (403,030) |
| Net income (loss) | $ 2,187,912 | $ (2,366,469) | $ 1,142,873 | $ (2,215,810) |
| | | | | |
| Net income (loss) per common share | | | | |
| Basic | $ 0.58 | $ (0.63) | $ 0.30 | $ (0.59) |
| Weighted-average number of common shares, basic | 3,784,000 | 3,763,156 | 3,785,997 | 3,763,454 |
| Diluted | $ 0.57 | $ (0.63) | $ 0.30 | $ (0.59) |
| Weighted-average number of common shares, diluted | 3,819,616 | 3,763,156 | 3,814,909 | 3,763,454 |

27.     The 2Q22 Report downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part, regarding its internal controls and its remediation efforts and timeline:

> *Notwithstanding the identified material weaknesses, management believes that the consolidated financial statements included in this Quarterly Report on Form 10-Q present fairly, in all material respects, our financial position, results of operations, and cash flows as of and for the periods presented in accordance with U.S. GAAP.*

> …

> **Changes in Internal Control Over Financial Reporting**

> In the fiscal year ending May 31, 2021, the Company acquired the Ample Hills business. As of November 30, 2021, management has expanded the head count in

the accounting and finance department and is in the process of integrating this new business line into the Company's overall internal control environment. *Further, management has performed a thorough review of processes and procedures to ensure appropriate segregation of duties are in place to improve the internal control environment. Management anticipates completing these integration efforts by the end of the fiscal year ending May 31, 2022.*

(Emphasis added.)

28.     On April 14, 2022, Schmitt Industries filed with the SEC its quarterly report on Form 10-K for the period ended February 28, 2022 (the "3Q22 Report"). Attached to the 3Q22 Report were certifications pursuant to SOX signed by Defendants Zapata and Bosco attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

29.     The 3Q22 Report provided the following, in pertinent part, regarding the Company's financials:

|  | Three Months Ended February 28, | | Nine Months Ended February 28, | |
|---|---|---|---|---|
|  | 2022 | 2021 | 2022 | 2021 |
| Net sales | $ 1,848,913 | $ 1,668,444 | $ 8,570,053 | $ 5,205,641 |
| Cost of revenue | 912,076 | 837,254 | 3,618,925 | 2,804,694 |
| Gross profit | 936,837 | 831,190 | 4,951,128 | 2,400,947 |
| Operating expenses |  |  |  |  |
| Selling, general and administrative | 3,312,388 | 3,313,918 | 11,604,964 | 8,492,150 |
| Transaction costs | — | — | — | 125,167 |
| Research and development | 10,771 | 21,732 | 25,616 | 57,062 |
| Total operating expenses | 3,323,159 | 3,335,650 | 11,630,580 | 8,674,379 |
| Operating loss | (2,386,322) | (2,504,460) | (6,679,452) | (6,273,432) |
| Bargain purchase gain | — | (2,277) | — | 1,187,235 |
| Gain on sale of property and equipment | — | — | 4,598,095 | — |
| Forgiveness of PPP loan | 1,471,292 | — | 2,059,826 | — |
| Interest expense | (8,232) | (5,400) | (37,811) | (12,854) |
| Other income, net | 38,286 | 90,703 | 323,589 | 58,777 |
| Income (loss) before income taxes | (884,976) | (2,421,434) | 264,247 | (5,040,274) |
| Income tax provision (benefit) | 8,268 | (1,637) | 14,618 | (404,667) |
| Net income (loss) | $ (893,244) | $ (2,419,797) | $ 249,629 | $ (4,635,607) |
|  |  |  |  |  |
| Net income (loss) per common share |  |  |  |  |
| Basic | $ (0.24) | $ (0.64) | $ 0.07 | $ (1.23) |
| Weighted-average number of common shares, basic | 3,788,315 | 3,764,536 | 3,790,022 | 3,759,369 |
| Diluted | $ (0.24) | $ (0.64) | $ 0.07 | $ (1.23) |
| Weighted-average number of common shares, diluted | 3,788,315 | 3,764,536 | 3,813,675 | 3,759,369 |

30.    The 3Q22 Report downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part, regarding its internal controls and its remediation efforts and timeline:

> *Notwithstanding the identified material weaknesses, management believes that the condensed consolidated financial statements included in this Quarterly Report on Form 10-Q present fairly, in all material respects, our financial position, results of operations, and cash flows as of and for the periods presented in accordance with U.S. GAAP.*

> **Changes in Internal Control Over Financial Reporting**

> In the fiscal year ending May 31, 2021, the Company acquired the Ample Hills business. As of February 28, 2022, management has expanded the head count in the accounting and finance department and is in the process of integrating this new business line into the Company's overall internal control environment. *Further, management has performed a thorough review of processes and*

*procedures to ensure appropriate segregation of duties are in place to improve the internal control environment. Management anticipates completing these integration efforts by the end of the fiscal year ending May 31, 2022.*

(Emphasis added.)

31.     The statements contained in ¶¶ 16-23 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Schmitt Industries continuously downplayed its serious issues with internal controls; (2) Schmitt Industries' financial statements from August 31, 2021 to the present included "certain errors"; (3) as a result, Schmitt Industries would need to restate its previously filed financial statements for certain periods; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

32.     Then on September 20, 2022, after market hours, the Company announced that it would restate its financial statements from August 31, 2021 to the present and expected to report at least one material weakness, stating the following, in pertinent part, in its current report filed with the SEC on Form 8-K:

**Item 4.02.     Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

*The Company has determined that it made certain errors* due to the ineffective application of cut-off procedures resulting primarily in the exclusion of certain general and administrative expenses from the statement of operations in the Company's financial statements during the fiscal year ended May 31, 2022. *The Company will therefore restate its previously filed quarterly financial statements for periods from August 31, 2021 forward,* as described further

14

below. *The Company currently estimates that the errors were material on a cumulative basis* resulting in a net $330,203 under-recognition of expenses over the first three quarters of the fiscal year. Specifically, the Company estimates a Q1 under-recognition of expenses by $559,818, a Q2 over-recognition of expenses by $353,048, and a Q3 under-recognition of expenses by $123,433.

Specifically, on September 19, 2022, the Audit Committee (the "Audit Committee") of the Board of Directors of the Company concluded, after discussion with the Company's management, that the Company's financial statements as of and for the quarterly periods ended from August 31, 2021 through February 28, 2022 (collectively, the "Non-Reliance Periods") included in the associated Form 10-Qs for the periods ended August 31, 2021, November 30, 2021 and February 28, 2022, including the comparative periods, filed with the Securities Exchange Commission (the "SEC"), *(1) should no longer be relied upon due to errors in the treatment of certain general and administrative expenses that were excluded from the statement of operations and (2) will require restatement.* As a result, the Company will file amendments to its Form 10-Qs for the periods ended August 31, 2021, November 30, 2021 and February 28, 2022 to restate the previously issued financial statements including the comparative periods. Similarly, *any previously issued or filed reports, press releases, earnings releases, and investor presentations or other communications describing the Company's financial statements and other related financial information covering the Non-Reliance Periods should no longer be relied upon.*

The Company is currently determining the exact amounts and full effect of the errors in the financial statements covering the Non-Reliance Periods. The Company's preliminary estimate is that, as of May 31, 2022, the cumulative effect of these errors is a misstatement of $330,203 in under-recognized expenses during the first three quarters of its fiscal year; however such amount is subject to revision as the Company finalizes its analysis. ...

*Management is assessing the effect of these restatements on the Company's internal control over financial reporting and its disclosure controls and procedures. The Company expects to report at least one material weakness following completion of its analysis of the cause of these restatements.* A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of a company's annual or interim financial statements will not be prevented or detected on a timely basis. ... As a result of the material weakness or material weaknesses, the Company believes that its internal control over financial reporting was not effective and its disclosure controls and procedures were not effective for the Non-Reliance Periods.

(Emphasis added.)

33.    On this news, Schmitt Industries' stock fell 17% to close at $3.12 per share on September 21, 2022, on unusually heavy trading volume, damaging investors.

34.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Schmitt Industries securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Schmitt Industries, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Schmitt Industries securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

37.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Schmitt Industries;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Schmitt Industries to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Schmitt Industries securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Schmitt Industries shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- As a public issuer, Schmitt Industries filed periodic public reports;

- Schmitt Industries regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Schmitt Industries' securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Schmitt Industries was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

42.    Based on the foregoing, the market for Schmitt Industries securities promptly digested current information regarding Schmitt Industries from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

18

43.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

44.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.    This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C: § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Schmitt Industries securities during the Class Period.

48. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Schmitt Industries were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Schmitt Industries, their control over, and/or receipt and/or modification of Schmitt Industries' allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Schmitt Industries, participated in the fraudulent scheme alleged herein.

49. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Schmitt Industries personnel to members of the investing public, including Plaintiff and the Class.

50. As a result of the foregoing, the market price of Schmitt Industries securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Schmitt Industries securities during the Class

20

Period in purchasing Schmitt Industries securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

51.    Had Plaintiff and the other members of the Class been aware that the market price of Schmitt Industries securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Schmitt Industries securities at the artificially inflated prices that they did, or at all.

52.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

53.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Schmitt Industries securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

54.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.    During the Class Period, the Individual Defendants participated in the operation and management of Schmitt Industries, and conducted and participated, directly and indirectly, in the conduct of Schmitt Industries' business affairs. Because of their senior positions, they knew the adverse non-public information about Schmitt Industries' false financial statements.

21

56.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Schmitt Industries' financial condition and results of operations, and to correct promptly any public statements issued by Schmitt Industries which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Schmitt Industries disseminated in the marketplace during the Class Period concerning Schmitt Industries' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Schmitt Industries to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Schmitt Industries within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Schmitt Industries securities.

58.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Schmitt Industries.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 11, 2022

RANSOM, GILBERTSON, MARTIN & RATLIFF LLP
By:
Jeffrey S. Ratliff
5441 S. Macadam Avenue, Suite 301
Portland, OR 97239
T: 503-226-3664

*Liaison Counsel for Plaintiff*


**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*

## Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Schmitt Industries, Inc. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis not to exceed one-third of the recovery and will advance all costs and expenses. All payments of fees and expenses shall be made only after Court review and approval. The Schmitt Industries, Inc. Retention Agreement provided to the Plaintiff is incorporated by reference herein and is effective, upon execution and delivery by The Rosen Law Firm P.A.

| | |
|---|---|
| **First Name:** | Lloyd |
| **Middle Initial:** | |
| **Last Name:** | Steinberg |
| **Mailing Address:** | Redacted |
| **City:** | |
| **State:** | |
| **Zip Code:** | |
| **Country:** | |
| **Phone:** | |
| **Email Address:** | |

Plaintiff certifies that:

1. Plaintiff has reviewed a complaint and authorized its filing or the filing of an amended complaint.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

**Purchases:**

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| | 4/12/2021 | 8500 | 8.2 |
| Common Stock | | | |

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|

**Sales:**

| Type of Security | Sale Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 9/22/2022 | 8500 | 2.36 |

| Type of Security | Sale Date | # of Shares | Price per Share |
|---|---|---|---|

Common Stock

**I have not sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years, except if set forth below.**
Not applicable

I declare and certify under penalty of perjury, under the laws of the United States    **YES**
of America, that the foregoing information is true and correct.

By Signing below and submitting this certification form electronically, I intend to    **YES**
sign and execute this certification pursuant to California Civil Code Section
1633.1, et seq. - and the Uniform Electronic Transactions Act and retain the
Rosen Law Firm, P.A. to proceed on Plaintiff's behalf, on a contingent fee basis.

Date of signing: 10/09/2022 09:27:49 at Eastern Standard Time, USA

